```
                    UNITED STATES DISTRICT COURT
                             FOR THE
                       DISTRICT OF VERMONT
```

Gary Ryder, as next friend       :
and on behalf of SV,             :
        Plaintiff,                :
                                 :
    v.                           :       File No. 1:05-CV-50
                                 :
William Chestnut,                :
        Defendant.                :

<u>OPINION AND ORDER</u>
(Papers 4, 6, 13 and 14)

Plaintiff Gary Ryder brings this action as next friend of SV.[1]  The complaint alleges that SV and his father, Frank Verkaik, lived for a period of time at defendant William Chestnut's home in Barnard, Vermont.  The complaint further claims that while at Chestnut's home, Verkaik physically abused SV, and that Chestnut negligently allowed this abuse to take place.  Jurisdiction is based upon diversity of citizenship, since SV now allegedly resides as an emancipated minor in New York.  (Paper 1).

Currently pending before the Court are Ryder's motion for a writ of attachment (Paper 6), motion for hearing on the writ of attachment (Paper 4), and motion to strike Chestnut's affirmative defenses (Paper 14).  Also pending is Chestnut's

---

[1] Although Ryder initiated the action *pro se*, he is now represented by counsel.

motion to appoint a guardian *ad litem* for SV.  (Paper 13).
For the reasons set forth below, these motions are DENIED.

## Discussion

I. Motion for Writ of Attachment

Fed. R. Civ. P. 64 provides that remedies for seizure of "persons or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held . . . ."  Under Vt. R. Civ. P. 4.1(b)(2), a court may issue a writ of attachment after finding that "there is a reasonable likelihood that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the amount of the attachment over and above any liability insurance, bond, or other security shown by the defendant to be available to satisfy the judgment."  The motion shall be supported by an affidavit made upon the affiant's own knowledge, information, or belief, "and so far as upon information and belief, shall state that the affiant believes this information to be true."  Vt. R. Civ. P. 4.1(i).

The Second Circuit has stated that "since attachment is an extraordinary remedy created by statute in derogation of common law, the provision should be strictly construed in favor of those against whom it is employed."  Brastex Corp. v.

2

Allen Intern., Inc., 702 F.2d 326, 328 (2d Cir. 1983) (citation omitted).  Indeed, "even if the plaintiff satisfies all of the statutory requirements for an order of attachment, the issuance of relief remains in the discretion of the Court, because attachment is recognized to be a harsh and extraordinary remedy."  JSC Foreign Economic Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc., 306 F. Supp. 2d 482, 485 (S.D.N.Y. 2004).

In this case, Ryder has submitted a motion, a draft order, and an affidavit.[2]  The affidavit echoes the allegations in the complaint.  Ryder has not submitted a memorandum of law in support of his motion.  The complaint alleges negligence, negligence *per se*, and negligent infliction of emotional distress, and seeks $1,000,000 in damages on each of the three counts.  The requested attachment would place a lien on a parcel of real property in Barnard, Vermont.

Ryder's affidavit does not state that the information set forth in the affidavit is based upon his knowledge, information or belief, and therefore does not comply with Vt. R. Civ. P. 4.1(i).  Furthermore, Ryder's lack of a legal argument in support of his claims makes it difficult for the

---

[2] All papers being considered in this order were filed when Ryder was *pro se.*

Court to find that he is reasonably likely to succeed on the merits.  For example, in Count 1 Ryder alleges simple negligence.  His facts in support of his claim, as set forth in his affidavit, contend that Chestnut failed to intervene while SV was abused.  Ryder has offered no legal argument, however, to support his theory that Chestnut (1) had a duty to SV under common law negligence, (2) breached that duty, and (3) was a cause of harm to SV (4) resulting in damages of $1,000,000.  See O'Connell v. Killington, Ltd., 164 Vt. 73, 76 (1995) (elements of negligence under Vermont law); State v. Joyce, 139 Vt. 638, 641 (1981) ("As a general rule, there is no duty under the common law to aid a person who is in danger.").

Count 2 of the complaint, although styled as a "negligence *per se*" claim, is a statutory claim under 12 V.S.A. § 519, Vermont's Duty to Aid the Endangered Act.  The Vermont Supreme Court has held, however, that this statute "does not create a duty to intervene in a fight."  Joyce, 139 Vt. at 641.  In light of this statement, it would seem that Ryder must show that the facts in this case are an exception under the statute.  Until he has done so, the Court cannot find that he is reasonably likely to recover on this claim.

Count 3 of the complaint alleges negligent infliction of emotional distress.  Again, however, Ryder has failed to cite

to the Court any cases with similar facts, or even arguably similar situations, that would indicate a reasonable likelihood of success on this claim.  See Jobin v. McQuillen, 158 Vt. 322, 328 (1992) (negligent infliction of emotional distress requires showing that plaintiff suffered physical harm or was subject to reasonable fear of immediate physical injury as the result of defendant's negligence).  For these reasons, the motions for attachment (Paper 6) and motion for a hearing (Paper 4) are DENIED.

## II.  Motion to Strike Affirmative Defenses

Ryder next moves to strike the nine affirmative defenses asserted by Chestnut.  Those defenses include insufficiency of service of process; failure to state a claim; preclusion as a matter of law; preclusion as a matter of public policy; standing; unclean hands; and the claim that Chestnut was not the proximate case of harm.  Chestnut also states that SV "is an unemancipated minor and cannot maintain this action without the authorization of his parent/legal guardian, Frank Verkaik," and that Ryder has a conflict of interest "which prevents him from filing and/or pursuing this action on behalf of SV."  (Paper 11 at 2).

Motions to strike are disfavored and will not be granted unless it is clear that the allegations in question can have no possible bearing on the subject matter of the complaint, or

5

it appears to a certainty that plaintiff would succeed despite any facts which could be proved in support of the defense. William Z. Salcer, Panfeld, Edelman et al. v. Envicon Equities Corp., 744 F.2d 935, 939 (2d Cir. 1985), vacated on other grounds, 478 U.S. 1015 (1986); Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir. 1976); Nextel of New York, Inc. v. City of Mount Vernon, 361 F. Supp. 2d 336, 340 (S.D.N.Y. 2005).  Even where the facts are not in dispute, a motion to strike an affirmative defense should not be used to determine disputed and substantial questions of law, especially when there has not been a chance for significant discovery.  Salcer, 744 F.2d at 939.

Ryder's primary objection to Chestnut's affirmative defenses is that Chestnut does not support his defenses with short and plain statements of facts as required by Fed. R. Civ. P. 8(a).  "[A]n affirmative defense may be pleaded in general terms and will be held to be sufficient, and therefore invulnerable to a motion to strike, as long as it gives the plaintiff fair notice of the nature of the defense."  5 Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 1274 (3d ed. 2004). Chestnut's pleadings are, therefore, sufficient.  See, e.g., Habiniak v. Rensselaer City Mun. Corp.,  919 F. Supp. 97, 100 (N.D.N.Y. 1996) ("none of the affirmative defenses appears unusually vague, confusing,

or legally bizarre; nor do they contain substantially less information than the overwhelming majority of affirmative defenses that parties in defensive postures typically file with this Court"); Almy Brothers Inc. v. McMahon, 971 F. Supp. 69, 72 (N.D.N.Y. 1997) (including failure to state a claim as an affirmative defense is "routine practice which is rarely, if ever, stricken by the court as legally insufficient" and is often considered "invulnerable as against the motion."). Furthermore, Chestnut's affirmative defenses are plainly related to this action, and it is not clear from Ryder's filings that he is certain to succeed, regardless of what facts are ultimately proven, against each defense.  The motion to strike affirmative defenses (Paper 14) is, therefore, DENIED.

III.  Motion to Determine Conflict and Appoint Guardian

Chestnut, proceeding *pro se*, has submitted a motion in which he contends that Ryder has a conflict of interest and should not be acting as next friend of SV.  Chestnut further moves the Court to appoint a guardian *ad litem* on behalf of SV.  (Paper 13).  Ryder has opposed the motion, stating that he has no such conflict.  (Paper 16).

The relationships among the parties in this case are complicated.  Ryder does not claim to be SV's parent or legal guardian.  Chestnut alleges that SV's father is, in fact, the

legal guardian.  Ryder claims, however, that SV's father is abusive.  It appears from the parties' filings that SV has fled his father's custody, and has at times been provided refuge by Ryder.  It has also been alleged that SV is emancipated under New York law, although the question of emancipation may be undecided.[3]

Further complicating matters is the apparent existence of a trust or trusts set up to benefit SV in the State of Connecticut.  The trusts were allegedly intended to benefit Ryder's two children and Verkaik's two children, one of whom is SV.  Chestnut claims that, in litigation regarding the trusts, "SV's interest was initially asserted by Mr. Verkaik to be adverse to the interest of Gary Ryder." (Paper 13 at 2). Chestnut also alleges that Ryder has filed a separate lawsuit in the United States District Court for the District of Connecticut, again as next friend of SV as well as his own two children, with respect to events that are unrelated to this case.

The primary concern for the Court in this case is that SV's interests are being fairly represented.  A "next friend" is merely a nominal party, and the real party in interest is

---

[3] Chestnut has attached to his motion a letter from an attorney, dated March 7, 2005, suggesting that the emancipation, at least in the State of Connecticut, was unsettled.  (Paper 13, Ex. C at 7-8).

the minor.  6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1570 (2d ed. 1990). Nonetheless, a guardian *ad litem* may be appointed where it appears that the representative has interests that are in conflict with the minor.  See Hoffert v. Gen. Motors Corp., 656 F.2d 161, 164 (5th Cir. 1981), cert. denied, 456 U.S. 961 (1982).

Here, it is not clear that Ryder's interests conflict with those of SV.  The majority of Chestnut's objections to Ryder pertain to Ryder's conflicts with SV's father, and not with SV himself.  Moreover, the only allegation of direct conflict between Ryder and SV, regarding the aforementioned trusts, is stated as an "initial assertion" by SV's father. Finally, it appears from the record that SV, in fleeing his father's custody, has at times sought assistance from Ryder.

While the Court is concerned that SV be properly represented in this case, it strikes the Court that this case, and this jurisdiction, may not be the most appropriate time or place for a guardianship determination.  The record shows that SV has spent approximately 10 days in Vermont.  Prior to that time, he was a longtime resident of Connecticut.  There are now allegations that SV lives in New York, and that he is approaching the age of majority.  The information before this Court as to the appropriateness of Ryder as SV's

9

representative is limited, and to the extent that a ruling by this Court on this issue might impact litigation in other jurisdictions, the Court is wary of issuing any such an order based upon this limited record.  The motion to determine a conflict and for appointment of a guardian *ad litem* (Paper 13) is, therefore, DENIED.

## Conclusion

For the reasons set forth above, Ryder's motions for a writ of attachment (Paper 6), for a hearing on the attachment motion (Paper 4), and to strike affirmative defenses (Paper 14) are DENIED.  Chestnut's motion for hearing to determine conflict and for appointment of guardian *ad litem* (Paper 13) is also DENIED.

Dated at Brattleboro, in the District of Vermont, this 4th day of November, 2005.

/s/ J. Garvan Murtha
J. Garvan Murtha
United States District Judge